**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 14 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

L-T- M,

Petitioner,

v.

MATTHEW G. WHITAKER, Acting
Attorney General,

Respondent.

No.   15-73248

Agency No. A097-365-604

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 4, 2018
Pasadena, California

Before:  D.W. NELSON and WARDLAW, Circuit Judges, and PRATT,[**] District
Judge.

Petitioner L-T-M is a native and citizen of Kenya.  She was initially

admitted into the United States on a valid F-1 student visa in December 2002.

Almost a year later, L-T-M applied for asylum, withholding of removal, and

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Robert W. Pratt, United States District Judge for the
Southern District of Iowa, sitting by designation.

protection under the Convention Against Torture (CAT), seeking relief based upon membership in a particular social group. She claimed she left Kenya to escape female genital mutilation demanded by her father, who is a village leader of the Mungiki sect, and feared for her safety if she were to return. In support of her asylum application, L-T-M included a letter signed by Charles B. Munuuve (Munuuve letter), dated August 18, 2002. The letter provided that L-T-M had been treated for three months at the Moi Teaching and Referral Hospital (Moi Hospital) in Eldoret, Kenya for injuries she sustained during her escape.

As part of its investigation into her application, an investigator for the U.S. Citizenship and Immigration Services (USCIS) Nairobi office faxed a copy of the Munuuve letter to the Moi Hospital for verification and identification. The response to the investigator's inquiry stated that the hospital had no record that L-T-M had ever been treated there or that Munuuve had ever been employed by the hospital, and therefore the letter was a forgery. Based upon this information, the investigator concluded the Munuuve letter was fraudulent. Following this revelation, the immigration judge (IJ) allowed L-T-M to respond, but she had no explanation for the investigative finding.

The IJ denied L-T-M's application and found she had knowingly submitted a frivolous asylum application because she had submitted a forged medical document. The Board of Immigration Appeals (BIA) did not consider the merits

of L-T-M's claims but remanded the IJ's decision to allow L-T-M to present a rebuttal witness with regard to the frivolous finding. After a hearing, the IJ again denied L-T-M's claims for asylum, withholding of removal, protection under CAT, and voluntary departure and found her application for asylum was frivolous. The BIA declined to take administrative notice of documents L-T-M submitted for the first time on appeal, affirmed the IJ's decision on the merits, and dismissed the appeal. L-T-M timely petitions for review.

We review for substantial evidence the BIA's factual findings, adverse credibility determinations, and conclusions of eligibility for asylum and withholding of removal. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010); *Lin v. Gonzales*, 472 F.3d 1131, 1133 (9th Cir. 2007). The record shows the IJ exhaustively reviewed the testimony and evidence presented by L-T-M, provided "specific, cogent reason[s]" for its adverse credibility determination, and identified numerous inconsistencies that went to the heart of L-T-M's claim. *Li v. Ashcroft*, 378 F.3d 959, 962 (9th Cir. 2004) (citation omitted). Because the evidence in this case does not "compel[] a contrary conclusion," *Malhi v. INS*, 336 F.3d 989, 993 (9th Cir. 2003), we deny L-T-M's petition as to this issue.

Next, we conclude the government violated the confidentiality of L-T-M's asylum application under 8 C.F.R. § 208.6 by disclosing both her identity and the Munuuve letter—an actual document contained in her asylum application—to a

3

third party without her written consent or an order of the IJ, allowing the third party to link her identity to "specific facts or allegations pertaining to the individual asylum claim contained in an asylum application." *Owino v. Holder*, 771 F.3d 527, 535 (9th Cir. 2014). Such disclosure "may 'give rise to a plausible protection claim . . . by bringing an otherwise ineligible claimant to the attention of the government authority or nonstate actor against which the claimant has made allegations of mistreatment.'" *Id.* (quoting U.S. Citizenship and Immigration Servs., *Fact Sheet: Federal Regulations Protecting the Confidentiality of Asylum Applicants* 2 (June 3, 2005), https://www.uscis.gov/sites/default/files/USCIS/ Humanitarian/Refugees%20%26%20Asylum/Asylum/fctsheetconf061505.pdf). Accordingly, we grant the petition as to this issue and remand for consideration of whether the disclosure gives rise to a new claim for asylum or withholding of removal.[1] *See Owino*, 771 F.3d at 535.

We further conclude the agency's frivolous finding is not supported by a preponderance of the evidence. In reviewing a determination that an asylum

---

[1] The government asserts L-T-M's request for protection under CAT is waived because she failed to raise the claim in her Opening Brief. We disagree. In her Opening Brief, L-T-M argues that remand for a hearing on an application for withholding of removal based upon any new threats caused by the violation of her confidentiality is required and notes that withholding of removal is one form of protection under CAT. Therefore, we conclude L-T-M has not waived her claim for relief under CAT. *See Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1126 n.1 (9th Cir. 2012).

4

applicant knowingly filed a frivolous application, we check for compliance with the procedural framework outlined in *In re Y-L-*, 24 I. & N. Dec. 151 (BIA 2007).[2] *Ahir v. Mukasey*, 527 F.3d 912, 917 (9th Cir. 2008). "Whether the IJ properly applied the regulatory framework is a question of law." *Khadka v. Holder*, 618 F.3d 996, 1002 (9th Cir. 2010). Questions of law are reviewed de novo. *Mohammed v. Gonzales*, 400 F.3d 785, 791–92 (9th Cir. 2005). "Whether a fabrication was of material elements is a mixed question of fact and law." *Khadka*, 618 F.3d at 1002. In the immigration context, mixed questions of fact and law are reviewed for substantial evidence. *Khan v. Holder*, 584 F.3d 773, 776 (9th Cir. 2009).

"[A] finding of frivolousness does not flow automatically from an adverse

---

[2] In order for an IJ to find an application is frivolous, the following requirements must be satisfied:

> First, an asylum applicant must have notice of the consequences of filing a frivolous application. Second, the IJ or Board must make specific findings that the applicant knowingly filed a frivolous application. Third, those findings must be supported by a preponderance of the evidence. Finally, the applicant must be given sufficient opportunity to account for any discrepancies or implausibilities in his application.

*Ahir*, 527 F.3d at 917.

L-T-M does not dispute that she received notice of the consequences of filing a frivolous application, nor does she dispute the IJ made a specific finding as to frivolousness. Instead, she claims the violation of her confidentiality under 8 C.F.R. § 208.6 renders the third and fourth elements futile. Because we conclude the finding of frivolousness is not supported by a preponderance of the evidence, we need not examine compliance with the fourth element.

credibility determination." *Khadka*, 618 F.3d at 1002 (citation omitted). Rather, "an asylum application is frivolous if any of its material elements is deliberately fabricated." 8 C.F.R. § 208.20. Here, the BIA adopted the IJ's determination that L-T-M's application for asylum was frivolous based upon her knowing submission of the fraudulent Munuuve letter and her failure to provide any other evidence that she had been a patient at the Moi Hospital for three months. But "[f]abrication of material evidence does not necessarily constitute fabrication of a material element." *Khadka*, 618 F.3d at 1004. The fraudulent letter is not a material *element* of her claim for asylum; rather, it is material *evidence*. *See id.* (citing *Element*, Black's Law Dictionary (9th ed. 2009) (defining "element" as "[a] constituent part of a claim that must be proved for the claim to succeed")). L-T-M was not required to prove that she spent three months receiving treatment at the Moi Hospital in order for her asylum claim to succeed.

Finally, we conclude the BIA did not abuse its discretion in refusing to take administrative notice of various documents L-T-M submitted for the first time on appeal. *See Fisher v. INS*, 79 F.3d 955, 963 (9th Cir. 1996). We agree with the BIA that L-T-M had more than enough time to gather these readily available documents and present her allegations for the IJ's consideration.

**GRANTED IN PART; DENIED IN PART; REMANDED.**